UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Continental Resources, Inc., | Case No. 1:16–cv–91–DLH |
| Plaintiff, | |
| v. | **RINK CONSTRUCTION, INC.'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Rink Construction, Inc., | |
| Defendant. | |

## INTRODUCTION

Defendant Rink Construction, Inc. previously opposed Plaintiff Continental Resources, Inc.'s motion for partial summary judgment. Rink Construction's prior opposition was largely based on its arguments that Continental's motion was unnecessary because Continental was being provided a defense in the underlying *Lodholtz* Lawsuit[1] and because the partial summary judgment motion was premature, unjustified in scope and substance, and involved disputed facts. (*See* 1/17/17 Opp. S.J. (Dkt. #25) at 7–17.)

This matter was stayed for several months until the *Lodholtz* Lawsuit was resolved. Following the entry of an over $6 million negligence judgment against Continental in the underlying *Lodholtz* Lawsuit, the Court (Magistrate Judge Miller) lifted the stay and issued an Order (Dkt. #44) allowing Rink Construction "to supplement its response" to Continental's pending partial summary judgment. Rink Construction accordingly submits this supplemental

---

[1] "*Lodholtz* Lawsuit" refers to the negligence action filed by Rink employee Brad Lodholtz against Continental, captioned *Lodholtz v. Continental Resources, Inc.,* No. 15–116 (D. N.D.) (the "*Lodholtz* Lawsuit"). For the Court's convenience, copies of the *Lodholtz* pleadings referenced in this supplemental opposition are attached as Exhibits to the Declaration of Shannon Awsumb dated January 12, 2018 ("1/12 Awsumb Decl."), submitted with this opposition.

memorandum and supporting declarations, which contain additional compelling and determinative arguments, as well as undisputed facts, all of which further support a denial of Continental's partial summary judgment motion.

Continental's motion essentially seeks a broad declaration that Rink Construction is required to "defend, indemnify and save harmless Continental from any and all losses, damages, or injuries" relating to the Master Service Contract ("MSC") and the *Lodholtz* Lawsuit, and all related defense costs, and any settlement payments. (*See* 12/13/16 Mem. S.J. (Dkt. #20) at 11–12.) However, because the MSC's indemnity provision that is the subject of Continental's partial summary judgment motion is void and unenforceable under both Oklahoma's anti-indemnity statute and common law jurisprudence, and because, at a minimum, the inquiry involves the consideration of disputed facts, Continental's motion fails both as a matter of fact and law, and should be denied in its entirety.

## SUPPLEMENTAL STATEMENT OF FACTS

Rink Construction submits the following supplemental statement of facts (cited *infra* as "Suppl. SOF ¶ ___"). As the Court is well aware, when deciding Continental's partial summary judgment motion, these supplemental facts must be taken as true and viewed in a light most favorable to Rink Construction. *See Tolan v. Cotton,* 134 S. Ct. 1861, 1863 (2014) ("in ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'") (Quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)).

A. **Continental hired Rink Construction to perform construction services at Continental sites throughout North Dakota.**

1. Rink Construction is a family owned construction business located in Keene, North Dakota. (*See* Boes Decl. ¶ 2; Rink Decl. ¶ 2.)[2]

2. Rink Construction is a licensed in by the State of North Dakota to perform construction services. (Boes Decl. ¶ 2; Rink Decl. ¶ 2.)

3. Rink Construction and its employees perform a variety of construction services, including: building roads to well sites; bringing in heavy construction equipment to grade and building up pads for tank sites; engaging in general excavation, hauling, and repair; performing maintenance work on oil well building sites; earthmoving; hauling gravel, topsoil, scoria, clay and specialty rock; general roustabout services; trucking; and spill cleanup and VAC truck services. (Boes Decl. ¶ 3; Rink Decl. ¶ 3.)

4. On or about April 2008, Continental hired Rink Construction to provide construction services to Continental in connection with Continental sites located throughout North Dakota. (*See* Rink Decl. ¶ 4; MSC (Dkt. # 20–1).) The contract that Rink Construction signed with Continental was a typical "Master Service Contract" used by companies such as Continental in the industry. (Rink Decl. ¶ 4.)

5. As a general rule, companies like Rink Construction not permitted to negotiate the terms of Master Service Contracts including the MSC at issue here. (Rink Decl. ¶ 5; Boes Decl. ¶ 4.)

---

[2] "Boes Decl." refers to the Declaration of Erika Boes dated January 12, 2018, submitted in conjunction with this Supplemental Opposition. "Rink Decl." refers to the Declaration of Delmer Rink dated January 12, 2018, submitted in conjunction with this Supplemental Opposition.

3

6.     This kind of unequal bargaining power is common with companies like Continental. (Rink Decl. ¶ 6; Boes Decl. ¶ 6.) In this industry, it is generally understood that you have to sign a Master Service Agreement presented to you "as is," without making any changes. (Rink Decl. ¶ 6; Boes Decl. ¶¶ 4–6.) Rink Construction believes that if it would have requested changes to the MSC back in 2008, Rink Construction would not have been allowed to change the agreement and, if it did not sign the agreement, Rink Construction would not have been awarded the work. (Rink Decl. ¶ 6; Boes Decl. ¶ 6.)

7.     Rink Construction relies on oil and gas companies like Continental to keep its business afloat. (Rink Decl. ¶ 6.) Rink Construction has always understood that the terms of Master Service Contracts are not negotiable and that Rink Construction has to take the contract on a "take it or leave it" basis. (*Id*; Boes Decl. ¶¶ 5–6.)

8.     The construction services that Rink Construction provided to Continental under the MSC have included: building roads to well sites; bringing in heavy construction equipment to grade and building up pads for tank sites; engaging in general excavation, hauling, and repair; performing maintenance work on oil well building sites; earthmoving; hauling gravel, topsoil, scoria, clay and specialty rock; general roustabout services; trucking; and spill cleanup and VAC truck services. (*See* Boes Decl. at ¶ 7 & Ex. 1 (providing examples of Work Orders Rink Construction performed under the MSC); *Lodholtz* Complaint (1/12 Awsumb Decl. Ex. 1) at ¶ 8; Continental's Answer to *Lodholtz* Complaint (1/12 Awsumb Decl. Ex. 2) at ¶ 7.)

**B.     Brad Lodholtz received an over $6 million judgment against Continental for bodily injury suffered working on a Continental well site.**

9.     On December 17, 2013, Brad Lodholtz, an employee of Rink, sustained severe bodily injuries while performing services for Continental on an oil and gas well in North Dakota known as the Bohmbach 4-35H well. (Compl. (Dkt. #1), at ¶¶ 9–10; Answer (Dkt. #5) at ¶¶ 9–

4

10; *Lodholtz* Complaint (1/12 Awsumb Decl. Ex. 1) ¶¶ 11–13; *Lodholtz* Answer (1/12 Awsumb Decl. Ex. 2) ¶¶ 9–11.) At that time, Lodholtz was rebuilding, replacing, and adjusting oil well components at the Bohmbach 4-35H well site. (*See, e.g., Lodholtz* Complaint (1/12 Awsumb Decl. Ex. 1) ¶¶ 11–13; *Lodholtz* Answer (1/12 Awsumb Decl. Ex. 2) ¶¶ 9–11; Boes Decl. at Ex. 1 (12/17/13 Work Order 079116 (describing work as "Pull apart flowline – Clean blockages and rebuild/Adjust pressures/Replace flare gas regulator").)

10. On or about July 29, 2015, Lodholtz and his wife commenced a lawsuit (the "*Lodholtz* Lawsuit") against Continental related to the injuries they suffered from the incident that took place on December 17, 2013. (*See* Lodholtz Compl. (1/12 Awsumb Decl. Ex.1).) In the *Lodholtz* Lawsuit, Lodholtz and his wife alleged that their damages arose out of Continental's negligence. (*Id.* at ¶¶ 14–20 & 21 ("Continental breached [its] duty and said breach was the proximate cause of severe and life-threatening injury to Lodholtz.").)

11. Rink Construction was not a party to the *Lodholtz* Lawsuit and no claims were made against Rink Construction in that Lawsuit. (*See* Lodholtz Compl. (1/12 Awsumb Decl. Ex. 1).)

12. On or about August 7, 2015, Continental sent a letter to Rink Construction in which Continental tendered defense and indemnity to Rink Construction and made a claim under Rink Construction's insurance policies, including a policy of commercial insurance maintained by Rink Construction. (*See* 8/7/15 letter (Dkt. # 20–2) at pp. 1–2.)

13. Mid-Continent Policy No. 04–GL–000881297 (policy period July 24, 2013 to July 24, 2014)—under which Continental made a demand and received a defense in the *Lodholtz* Lawsuit—provided commercial general liability coverage to Rink and included a standard CGL coverage form. (*See* 10/7/15 Mid-Continent Letter (Dkt. #20–3); 4/4/16 Mid-Continent Letter

5

(Dkt. #20–4); Boes Decl. ¶ 8 & Ex. 2 (CGL Policy's declarations page).) The CGL Policy's endorsements identified several additional insureds related to Rink Construction's business. *See id.* (CGL Policy's endorsements).

14. On July 22, 2017, a jury found Continental negligent in the *Lodholtz* Lawsuit and entered an $8,496,000 verdict against Continental. *See* Special Verdict Form (1/12 Awsumb Decl. Ex. 3), at Questions Nos. 6 & 10.) The jury reduced the verdict against Continental to account for Lodholtz's comparative fault. (*See id.* at Question No. 5 (apportioning fault as "72.5% to Continental Resources, Inc." and "27.5% to Brad Lodholtz.").) No fault was apportioned to Rink Construction under the Special Verdict Form. (*See id*.)

15. After the over $8 million jury verdict in the *Lodholtz* Lawsuit was adjusted by the jury to account for Lodholtz' s comparative fault, the Clerk of Court entered an amended judgment for $6,159,600 against Continental. (*See* Amended Judgment (1/12 Awsumb Decl. Ex. 4).)

16. On or about August 25, 2017, Continental sent a letter to Rink Construction. (Boes Decl. ¶ 9 & Ex. 3). In that letter, Continental alleged that Rink Construction was required to indemnify Continental for the entire $6,159,600 verdict under the MSC. (*Id*.)

**SUPPLEMENTAL ARGUMENT**

**I.     Continental Is Not Entitled To Summary Adjudication Of Its Declaratory Judgment Claim Based On The Applicable Oklahoma Law And The Evidentiary Record.**

This Court's function at the summary judgment stage is not to weigh the evidence, but to determine whether there is a genuine issue for trial. The burden is on the moving party to show the absence of any material fact. *See Tolan,* 134 S. Ct. at 1866. When deciding Continental's partial summary judgment motion, Rink Construction's evidence must be taken as true and viewed in a light most favorable to Rink Construction. *See Tolan,* 134 S. Ct. at 1863, 1866.

*Accord Scott v. Harris*, 550 U.S. 372, 378 (2007) ("courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'").

Viewing all of the evidence in the light most favorable to Rink Construction, as is required by Rule 56, Continental fails to demonstrate entitlement to summary adjudication of its declaratory judgment claim (Count II) both as a matter of law and fact.

## II.     The Master Service Contract's Indemnity Provision Is Void Under Oklahoma's Anti-Indemnity Statute.

Continental's summary judgment motion essentially seeks a broad declaration that Rink Construction is required to "defend, indemnify and save harmless Continental from any and all losses, damages, or injuries" relating to the MSC and the *Lodholtz* Lawsuit (which would include the almost $7 million judgment against Continental) and all related defense costs, and any settlement payments. (*See* 12/13/16 Mem. S.J. (Dkt. # 20) at 11–12.)  However, because the MSC's indemnity provision that is the subject of Continental's partial summary judgment motion is void under Oklahoma law, and because resolution of Continental's declaratory judgment claim involves the consideration of disputed facts, the Court should deny Continental's motion.

### A.     The MSC is a construction contract governed by Oklahoma's anti-indemnity statute.

Continental and Rink Construction agree that the MSC is governed by Oklahoma law. (*See* Mem. S.J. (Dkt. #20), at 7 (applying Oklahoma law, and stating that "Rink expressly agreed the MSC 'shall be governed by the laws of the State of Oklahoma.'"); MSC (Dkt. #20–1) at

¶ 13.1.) This Court's application of Oklahoma law to the MSC is also required by the applicable North Dakota choice of law rules.[3]

Oklahoma's anti-indemnity statute, Okla. Stat. Ann. tit. 15, § 221, renders certain indemnity provisions in construction agreements void and unenforceable as a matter of law. *See also* 8 No. 2 Journal of the American College of Construction Lawyers 1 (Aug. 2014), at n.12 (citing Okla. Stat. Ann. tit. 15, § 221; recognizing that Oklahoma is one of "[t]wenty-eight states [that] prohibit both broad and intermediate form indemnity agreements. . . . In these states, an indemnitor can be required to indemnify the indemnitee only to the extent of the indemnitor's own negligence. The indemnitor cannot be held responsible for the indemnitee's negligence, no matter the degree."). Anti-indemnity statutes, like Oklahoma's, "reflect a belief that it is against public policy to require a non-negligent party to be responsible for an act or omission for which it was not at fault because an indemnitee who knows that another party is ultimately responsible for the indemnitee's negligent acts (or omissions) may not act as carefully as it otherwise might if it knows it will be responsible for its own acts." *Id.*

Oklahoma's anti-indemnity statute provides in relevant part:

[A]ny provision in a construction agreement that requires an entity **[Rink Construction]** or that entity's surety or insurer to indemnify, insure, defend or hold harmless another entity **[Continental]** against liability for damage arising out of death or bodily injury to persons, or damage to property, which arises out of the negligence or fault of the indemnitee **[Continental]**, its agents, representatives, subcontractors, or suppliers, is void and unenforceable as against public policy.

---

[3] *See Perkins v. Clark Equip. Co., Melrose Div.*, 823 F.2d 207, 208 (8th Cir. 1987) ("In diversity of citizenship cases the district court must apply the choice of laws rules of the state in which it sits."). North Dakota courts respect parties' agreements as to contractual choice of law. *See, e.g., Am. Hardware Mut. Ins. Co. v. Dairyland Ins. Co.,* 304 N.W.2d 687, 689 n.1 (N.D. 1981) ("Parties may stipulate as to choice of law."); *Snortland v. Larson,* 364 N.W.2d 67, 69 (N.D. 1985) ("[B]ecause the parties have chosen Minnesota as the state of the applicable law, we . . . will apply the substantive law of Minnesota to this case.").

Okla. Stat. Ann. tit. 15, § 221(B) (emphasis added).

Oklahoma's anti-indemnity statute broadly defines a "construction agreement" as a "contract, subcontract, or agreement for construction, alteration, renovation, repair, or maintenance of any building, building site, structure, highway, street, highway bridge, viaduct, water or sewer system, or other works dealing with construction, or for any moving, demolition, excavation, materials, or labor connected with such construction." Okla. Stat. Ann. tit. 15, § 221(A). *See also Bitco Gen. Ins. Corp. v. Commerce & Indus. Ins. Co.,* No. 15–206, 2017 WL 835197, at *3 (W.D. Okla. Mar. 2, 2017) (applying the anti-indemnity statute to contracts for the construction of the Great Salt Plains Pipeline); *Bitco Gen. Ins. Corp. v. Wynn Constr. Co.*, No. 17–462, 2017 WL 3470584, at *2 (W.D. Okla. Aug. 11, 2017) (applying the anti-indemnity statute to a master contract and project-specific contract involving a construction company).

Here, the evidence in the record unequivocally demonstrates that the MSC is a "construction agreement" under Section 221(A). Rink Construction has provided numerous and extensive construction services to Continental under the MSC, including building roads to well sites; bringing in heavy construction equipment to grade and building up pads for tank sites; engaging in general excavation, hauling, and repair; performing maintenance work on oil well building sites; earthmoving; hauling gravel, topsoil, scoria, clay and specialty rock; general roustabout services; trucking; and spill cleanup and VAC truck services *See* Suppl. SOF ¶¶ 8–9.

Because the MSC is a construction agreement, under the applicable anti-indemnity statute, "any provision" in the MSC that requires Rink Construction "to indemnify, insure, defend or hold harmless" Continental "against liability for damage arising out of death or bodily injury to persons, . . . which arises out of the negligence or fault of the indemnitee [Continental] . . . <u>is void and unenforceable as against public policy</u>." Okla. Stat. Ann. tit. 15, § 221(B) (emphasis added). The indemnity provision of the MSC that Continental seeks to enforce via its

9

partial summary judgment motion runs afoul of Okla. Stat. tit. 15 § 221(B) because it requires one entity (Rink Construction) to indemnify another entity (Continental) against its own (i.e., the indemnitee's/Continental's) negligence and is therefore "void and unenforceable" under Oklahoma law.

Specifically, MSC ¶ 4.1 requires Rink Construction to indemnify Continental "against any and all claims, demands, judgments, defense costs or suits" including "bodily injury" that arise out of or are related to the performance of MSC "including Continental Group's own negligence[.]" (MSC (Dkt. # 20–1) ¶ 4.1.) It is undisputed that $6,159,600 judgment against Continental in the *Lodholtz* Lawsuit—for which Continental seeks indemnity from Rink in this action—arises out of "bodily injury" and was due to the negligence of Continental. *See* Suppl. SOF ¶¶ 14–15. Because Section § 221(B) renders the MSC's indemnity provision at issue in Continental's partial summary judgment motion to be void and unenforceable, Continental is not entitled to a declaration, as a matter of law, that Rink Construction is obligated to indemnify Continental for the over $6 million *Lodholtz* Lawsuit judgment. The Court should deny Continental's partial summary judgment motion.[4]

---

[4] Rink Construction notes that the analysis before this Court is both legally and factually inapposite from this Court's previous decision in *Chapman v. Hiland Partners GP Holdings, LLC*, No. 13–cv–052, 2015 WL 12591722, at *1 (D. N.D. Apr. 23. 2015), in which this Court applied Oklahoma law to uphold an indemnity provision that was being challenged by an indemnitor, Missouri Basin. Importantly, Missouri Basin's contract was not a "construction agreement" under Okla. Stat. Ann. tit., 15 § 221(A). *See id.* at *7. Instead, Missouri Basin had argued (unsuccessfully) that its contract was a "motor carrier contract." *Id.* at *6. In addition, this Court found that "Missouri Basin was free to reject" the terms of its contract with Hiland and Missouri Basin did not argue—unlike Rink Construction here— that its contract resulted from unequal bargaining power. *Id.* at *7 ("There is no suggestion that the contract was not the result of an arm's length transaction.").

### B. No exceptions to Oklahoma's anti-indemnity statute apply to the MSC.

Oklahoma's anti-indemnity statute contains two exceptions, neither of which apply to the MSC at issue here.

#### 1. Section 221(C) does not apply because no amount of the $6,159,600 judgment is attributable to Rink Construction, its agents, or representatives under Section 221(C).

The first anti-indemnity exception, Section 221(C), provides:

> The provisions of this section do not affect any provision in a construction agreement that requires an entity **[Rink Construction]** or that entity's surety or insurer to indemnify another entity **[Continental]** against liability for damage arising out of death or bodily injury to persons [**Lodholtz**], or damage to property, <u>but such indemnification shall not exceed any amounts that are greater than that represented by the degree or percentage of negligence or fault attributable to the indemnitor **[Rink Construction]**, its agents, representatives</u>, subcontractors, or suppliers.

Okla. Stat. Ann. tit. 15, § 221(C) (emphasis added).

There is no evidence in the summary judgment record to support a finding that any part of the $6,159,600 judgment against Continental in the *Lodholtz* Lawsuit is somehow attributable to the indemnitor, Rink Construction, or its agents or representatives. The over $8 million jury verdict was adjusted to account for Continental's 72.5% comparative fault and Lodholtz's 27.5% comparative fault, and the amended judgment entered by the clerk of court reflects that allocation of fault. *See* Suppl. SOF ¶¶ 14–15. Thus, the entire $6,159,600 verdict assessed against Continental represents damages attributable to Continental's <u>own</u> 72.5% negligence. *See id.* Under Section 221(C), Rink's obligation to indemnify Continental cannot exceed the amount attributable to Rink—which in this case, is ***zero dollars*** since the entire $6,159,600 verdict assessed against Continental represents damages attributable to Continental's <u>own</u> of negligence—not Rink's or Lodholtz's. *See id.*

11

A federal district court in Oklahoma recently applied Section 221(C) to reach a similar result. *See Bitco*, 2017 WL 835197, at *3. In *Bitco*, a project owner and general contractor subcontracted with Global to perform welding work. *Id.* at *1. Several lawsuits against the parties ensued after a fire damaged real and personal property. *Id*. Both the owner (Parnon) and the general contractor (IPS) sought to require the subcontractor Global's insurer, Bitco General Insurance Corporation, to defend and indemnify IPS and Parnon under provisions in the general contract and subcontract. *Id.* at *2. The *Bitco* court determined that Section 221(B)'s anti-indemnity provision applied to the contracts, and that the anti-indemnity exception set forth in Section 221(C) did not apply because there were "no claims being asserted against IPS or Parnon [the indemnitees] seeking to hold them vicariously liable for any alleged negligence of Global [the welder/ indemnitor]; the claims being asserted against IPS and Parnon in the Underlying Lawsuits are for the alleged negligence of IPS and the alleged negligence of Parnon." *Id.* at *3. Similarly here, there were no claims alleged against Rink Construction in the *Lodholtz* Lawsuit and no fault was attributed to Rink Construction for the jury's over $6 million verdict against Continental. *See* Suppl. SOF ¶¶ 11, 14–15. Section 221(C) plainly does not apply.

> **2.    Section 221(D) does not apply because the MSC did not require Rink to purchase—and Rink did not purchase—project-specific insurance policies.**

The second anti-indemnity exception, Okla. Stat. Ann. tit. 15, § 221(D), is likewise inapplicable. Section 221(D) provides:

> This section shall not apply to construction bonds nor to contract clauses which require an entity **[Rink Construction]** to purchase <u>a project-specific insurance policy</u>, including owners' and contractors' protective liability insurance, project management protective liability insurance, or builder's risk insurance.

Okla. Stat. Ann. tit. 15, § 221(D) (emphasis added).

Here, it is undisputed that Rink was not required under the MSC to purchase a project-specific insurance policy and Rink did not purchase a project-specific policy. The insurance clause of the MSC required Rink Construction to maintain "policies of insurance in favor of Continental" and to add Continental as an "additional insured[.]" (*See* MSC (Dkt. #20–1), at ¶ 3.1.) The Mid-Continent Policy—under which Continental received a defense in the *Lodholtz* Lawsuit—is a commercial general liability policy that provided insurance for all of Rink Construction's activities falling under its scope. *See* Suppl. SOF ¶ 13. The Mid-Continent CGL Policy is not specific to one project, and does not fall under the types of "project-specific insurance" policies that are specifically enumerated in Section 221(D), such as owners' and contractors' protective liability insurance, project management protective liability insurance, or builder's risk insurance. *See id.*[5]

A federal district court in Oklahoma applying Section 221(D) reached a similar result in another recent case. *See Bitco*, 2017 WL 3470584, at *2. The *Bitco* court determined that the exception in Section 221(D) did not apply where "the insurance policies at issue [we]re not project-specific policies" and where "the construction contracts do not require Wynn [the construction company/indemnitor] to purchase a project-specific insurance policy." *Id.* at *2.

Because the MSC did not require Rink Construction to purchase—and Rink Construction did not purchase—a "project-specific insurance policy," Section 221(D) is inapplicable.

---

[5] Nor can the fact that Rink Construction provided a certificate of insurance to Continental under the terms of the MSC satisfy Section 221(D)'s exception. *See* MSC (Dkt. # 20–1) at ¶ 3.2; Certificate (Dkt. # 20–2).) The Oklahoma Insurance Code makes clear that a "certificate of insurance is not a policy of insurance and does not affirmatively or negatively amend, extend, or alter the coverage afforded by the policy to which the certificate of insurance makes reference." 36 Okla. Stat. Ann. § 3640(J).

In summary, based on the record and the applicable Oklahoma law, the anti-indemnity statute, Section 221(B), renders the MSC's indemnity provision at issue in Continental's partial summary judgment motion to be void and unenforceable against Rink Construction. Accordingly, Continental is <u>not</u> entitled to any of the declarations that it seeks via its partial summary judgment motion relating to the MSC or to the *Lodholtz* Lawsuit.

### III. The Master Service Contract's Indemnity Provision Is Void Under Oklahoma's Common Law Jurisprudence.

In addition to being void and unenforceable under Oklahoma's anti-indemnity statute, the MSC's indemnity provision is also void under Oklahoma's common law jurisprudence.

Oklahoma courts "strictly construe[]" agreements to indemnify a party against its own negligence or liability. *See Noble Steel, Inc. v. Williams Brothers Concrete Constr. Co.*, 49 P.3d 766, 770 (Okla. Ct. App. 2002). To be enforceable, such an agreement must meet the following three conditions: "(1) the parties must express their intent to exculpate in unequivocally clear language; (2) the agreement must result from an arm's-length transaction between parties of equal bargaining power; and (3) the exculpation must not violate public policy." *Id.* In this case, the MSC's indemnity provision is unenforceable because Continental cannot satisfy the first and second conditions listed above.

#### A. The MSC did not result from an arm's-length transaction between parties of equal bargaining power.

Oklahoma courts recognize that agreements to indemnify a party against its own negligence are unenforceable if they do not result from an arm's-length transaction between parties of equal bargaining power. *See Noble Steel*, 49 P.3d at 770. Whether equal bargaining power exists is a question of fact inappropriate for summary resolution. *See Graham v. Chicago R.I. & P. Ry. Co.*, 431 F. Supp. 444, 448 (W.D. Okla. 1976) ("Equality of bargaining position is

14

clearly a question of fact."). To determine whether equal bargaining power exists, this Court should consider: "(1) the importance of the subject matter to the physical or economic well-being of the party agreeing to the release[,] and (2) the amount of free choice that party could have exercised when seeking alternate services." *Schmidt v. United States*, 912 P.2d 871, 874 (Okla. 1996).

The presence of an adhesion contract—a "standardized contract prepared entirely by one party to the transaction for the acceptance of the other"—signals that a "disparity in bargaining power" exists. *See Max True Plastering Co. v. U.S. Fid. & Guar. Co.*, 912 P.2d 861, 864 (Okla. 1996). This is because an adhesion contract is offered by on a "take-it-or-leave-it basis[.]" *Bilbrey v. Cingular Wireless, L.L.C.*, 164 P.3d 131, 134 (Okla. 2007). Under such circumstances, there is no "bargaining," as is characteristic of a normal contract, between two parties of equal bargaining power. *Id*. *See also Max True*, 912 P.2d at 864 (adhesion contracts, "because of the disparity in bargaining power[,] . . . must be accepted or rejected on a 'take it or leave it' basis[.]").

For example, in *Arnold Oil*, an Oklahoma federal district court determined that a party's contract defense of alleged unequal bargaining power was not amenable to summary disposition. *See Arnold Oil Props., L.L.C. v. Schlumberger Tech. Corp.*, No. 08–1361, 2010 WL 476633, at *4–5 (W.D. Okla. Feb. 4, 2010), *aff'd sub nom. Arnold Oil Props. LLC v. Schlumberger Tech. Corp.*, 672 F.3d 1202 (10th Cir. 2012). The district court recognized that the plaintiff had argued that the "form contract used by the defendant, in essence, presents a take-it-or-leave-it deal, and that because the defendant's competitors in the industry utilize similar provisions, the plaintiff is left with little choice in obtaining similar services on more favorable terms." *Id*. The district

court determined that evidence, when viewed most favorably to the plaintiff as required by Rule 56, raised a genuine issue of material fact on the unequal bargaining power issue. *Id*.

Ultimately, a jury in *Arnold Oil* concluded that the exculpatory provision at issue was unenforceable due to the parties' unequal bargaining power and that verdict was affirmed by the Tenth Circuit. *See Arnold Oil,* 672 F.3d at 1207–08. The Tenth Circuit recognized that the jury heard evidence that the contract was offered on a take-it-or-leave-it basis, that the terms were generally known in the industry to be non-negotiable, and that the company doubted that it could ever modify such contracts due to how the industry operates. *See id*. Such evidence was sufficient to support the jury's finding that the parties to the contract "were in unequal bargaining positions," rendering the contract's exculpatory provision unenforceable. *Id.* at 1208.

Similarly, the evidence before this Court establishes that the MSC is an adhesion contract that is typical of the standard Master Service Contracts used in the industry in which it is known that companies, like Rink Construction, are not permitted to negotiate the terms of the contracts which are presented to them on a "take it or leave it" basis. *See* Suppl. SOF ¶¶ 4–7. In the industry, it is generally understood that you have to sign a Master Service Agreement presented to you "as is," without making any changes. *See id.* Rink Construction believes that if it would have requested changes to the MSC back in 2008, Rink Construction would not have been allowed to change the agreement and, if it did not sign the agreement, Rink Construction would not have been awarded the work. *See id.* And, Rink Construction relies on oil and gas companies like Continental to keep its business afloat. *See id*.

This evidence, when viewed in a light most favorable to Rink Construction, raises a fact issue regarding unequal bargaining power that is not amenable for summary resolution, therefore


Continental's partial summary judgment regarding indemnity should be denied. *See Arnold Oil,* 2010 WL 476633, at *4.

        **B.**        **The Master Service Contract's indemnity provision violates public policy.**

Oklahoma courts also recognize that agreements to indemnify a party against its own negligence are void if they violate public policy. *See Noble Steel*, 49 P.3d at 770. Specifically, "[t]wo classes of exculpating agreements may be said to violate public policy: (1) those which—if enforced—patently would tend to injure public morals, public health or confidence in the administration of the law[,] and (2) those which would destroy the security of individuals' rights to personal safety or private property." *Schmidt*, 912 P.2d at 875.

For example, in *Robinson*, an Oklahoma district court held that an indemnity clause protecting an elevator operator from its own negligence violated public policy under *Schmidt*. *See Robinson v. Kerr*, No. 05–4875, 2008 WL 8065315 (Okla. Dist. Ct. Dec. 29, 2008). After reviewing Oklahoma law, the *Robinson* court determined that the State of Oklahoma had an interest in protecting the public from elevator accidents. *Id.* The *Robinson* court determined that this public policy was undermined when the party in sole control of an elevator's "safety regime" was "also indemnified from any negligent failure" to keep it "in safe operating condition." *Id.* Under such circumstances, "[t]he only party with the control necessary to safeguard the public [could] refrain from doing their duty . . . ." *Id.* This "result[ed] in a consequent loss in public safety." *Id.* Accordingly, the indemnity clause permitting such behavior was void. *Id.*

Similarly, in this case, the State of Oklahoma has a whole title devoted to oil and gas regulation that contains numerous rules relating to the safe operation of oil and gas wells, including a section that regulates the conduct of oil and gas well operators. *See* Okla. Stat. Ann. tit. 52; *see, e.g., id.* at § 310 (allowing the Corporation Commission to enter onto any well

operator's land, to repair wells posing a public safety risk), § 320.2 (prohibiting any person from "alter[ing], destroy[ing] or tamper[ing] with any [oil or gas] safety equipment," without obtaining proper consent), and § 325 (empowering the Corporation Commission to "prescribe and promulgate rules and specifications for [oil and gas] safety").

Oklahoma expressly recognizes that it is an important public policy to keep the public safe from oil and gas accidents, such as the one in this case, and to ensure that public policy is fulfilled by regulating oil and gas well operators. The indemnity provision in the MSC undermines Oklahoma's public policy by shifting the consequences of negligent oil and gas well administration from the people in control of the oil and gas wells (like Continental), to the people who cannot make them any safer (like Rink Construction). Under such circumstances, this Court—like the court in *Robinson*—should invalidate the MSC's indemnity provision as being against public policy.

## **CONCLUSION**

Because the MSC's indemnity provision is void and unenforceable under Oklahoma's anti-indemnity statute and common law jurisprudence, Rink Construction respectfully requests that this Court deny Continental's motion for partial summary judgment in its entirety. Continental is not entitled to any summary declaration in its favor regarding the MSC in this case.

**ANTHONY OSTLUND**
**BAER & LOUWAGIE P.A.**

Dated: January 12, 2018 By: *s/ Kristin B. Rowell*
Kristin B. Rowell (ND # 07854)
krowell@anthonyostlund.com
Shannon M. Awsumb (*pro hac vice*)
sawsumb@anthonyostlund.com
90 South 7th Street
3600 Wells Fargo Center
Minneapolis, MN 55402
Telephone: 612-349-6969

and

**Schweigert, Klemin & McBride**
David D. Schweigert (#05123)
116 North 2nd Street
P.O. Box 955
Bismarck, ND 58502
Telephone: 701-258-8988
dschweigert@bkmpc.com

**ATTORNEYS FOR RINK CONSTRUCTION, INC.**