**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| CONTINENTAL RESOURCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-91-DLH |
| | ) | |
| RINK CONSTRUCTION, INC., | ) | |
| | ) | |
| Defendant. | ) | |

---

**PLAINTIFF CONTINENTAL RESOURCES, INC.'S REPLY BRIEF
IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Gary S. Chilton (admitted to D.N.D.)
Ryan A. Haynie (admitted to D.N.D.)
HOLLADAY & CHILTON PLLC
204 North Robinson, Suite 1550
Oklahoma City, Oklahoma 73102
Telephone:    (405) 236-2343
Facsimile:    (405) 236-2349
gchilton@holladaychilton.com
rhaynie@holladaychilton.com

Lawrence Bender, ND Bar #03908
Danielle M. Krause, ND Bar #06874
FREDRIKSON & BYRON
1133 College Drive, Suite 1000
Bismarck, ND 58501
Telephone:    (701) 221-4020
Facsimile:    (701) 221-8750
lbender@fredlaw.com
dkrause@fredlaw.com

ATTORNEYS FOR DEFENDANT
CONTINENTAL RESOURCES, INC.

February 2, 2018

I.   **CONTINENTAL IS ENTITLED TO SUMMARY JUDGMENT ON ITS DECLARATORY JUDGMENT CLAIM BECAUSE 15 OKLA. STAT. § 221 HAS NO EFFECT ON THE MSC.**

Rink's contention that the parties' Master Service Contract ("MSC") is a "construction contract" and therefore its indemnity provisions are void and unenforceable under Oklahoma's "anti-indemnity statute" is without any merit for the simple reason that master service contracts are not construction agreements.

**A.   The MSC is not a Construction Agreement**

This Court has previously recognized "that in the oil and gas industry the parties' agreement often consists of two parts -- a master service contract and a drilling contract or job specific work order." *Star Ins. Co. v. Cont'l Res., Inc.*, Case No. 4:12-cv-121, 2014 U.S. Dist. LEXIS 188408, at *14-15 (D.N.D. Jan. 23, 2014) (citing *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 787 n.6 (5th Cir. 2009) (discussing the common practice in the oil and gas field to enter contracts in two stages--a long-term blanket contract and a subsequent work order which usually incorporates the terms of the blanket contract); *Dominion Exploration & Prod., Inc. v. Delmar Systems, Inc*., No. 07-9492, 2012 U.S. Dist. LEXIS 171137, 2012 WL 6020121, at *5 n.6 (E.D. La. Dec. 3, 2012) (noting it is a common practice for oil and gas contracts to be issued in two stages--a blanket agreement and a work order).  This is exactly the type of standard master service contract entered into between Continental and Rink.

A master service agreement standing alone obligates neither party to perform any services, much less construction services.  The issuance of a specific work order triggers the obligation to perform.  *Austin Maintenance & Constr., Inc. v. Crowder Constr., Co.*, No. COA 12-201, 2012 WL 6595834, at *12 (Ct. App. N.C. Dec. 18, 2012), *citing Burnham v. Sun Oil Co.*, 618 F.Supp. 782, 785-86 (W.D. La. 1985); *Moser v. Aminoil, U.S.A., Inc.*, 618 F.Supp. 774, 779 (W.D. La. 195)("The [master service agreement] does not bind either party to perform any services.  It merely

1

sets forth their agreement to abide by certain terms should they enter into contractual relations in the future."); *Mobil Oil Corp. v. Schlumberger*, 498 So.2d 1341, 1345 (Ala. 1992).

Here, the MSC anticipated that when Rink performed work, additional terms specific to the particular job would be supplied by a work order. *See* Docket No. 20-1, pp. 9-10, ¶¶1[1] and 7.[2] In the normal course of business between Continental and Rink, Rink admits job-specific work orders defined the work to be performed. *See* Docket No. 47-1. Rink's work orders were the vehicle the parties utilized to provide the necessary details such as specific services to be rendered, pricing, and location. *Id.* The MSC, on the other hand, set forth the parties' agreement regarding general matters that apply to all future work orders, such as insurance and indemnity. It is not, by any stretch of the imagination, a "construction contract" for the construction of a building, highway, street, bridge or water or sewer system as contemplated by 15 OKLA. STAT. § 221(A). That *some* of Rink's work orders may have involved construction-related work does not change the fundamental and essential nature of the industry-accepted MSC into a "construction contract."

Moreover, the work order for the *actual work* being performed by Rink at the time of the well accident conclusively shows Rink was *not* doing construction work at all, but rather thawing and unblocking a frozen choke on a well flow line. *See* Docket No. 46-1, ¶¶ 12-13; *see* Docket No. 47-1, p. 2. That is standard oil-field repair and maintenance work, which is why Rink's employee, Lodholtz, was dispatched to the well site to begin with -- he was "supervisor of a Rink

---

[1] "In consideration of the service or work *to be performed* by Contractor, … *it is contemplated* that Contractor will, from time to time, *be requested* by Continental, through its duly authorized representatives *to perform* certain work or furnish certain services to Continental…Contractor will begin each *particular* job at such time *as is agreed upon* between Contractor and Continental's representatives …" (emphasis added).

[2] "… so that Contractor *may perform*, from time to time, such work and/or render such services *as the parties mutually may agree* …" (emphasis added).

maintenance crew" and his job duties were "oil site maintenance, supervision, and repair." *See* Docket No. 46-1, p.2, ¶¶ 10-12.[3]

Master service contracts relating to the operation of oil and gas well sites are not construction agreements for the purposes of Section 221. *See Williams v. Inflection Energy, LLC*, No. 4:15-00675, 2016 U.S. Dist. LEXIS 111273, at *15 (M.D. Penn. August 22, 2016) (holding similar statute did not apply to Master Service Agreement and granting summary judgment for indemnitee); *Higby Crane Serv., LLC v. Nat'l Helium, LLC*, 2015 U.S. Dist. LEXIS 130120, at *35 (D. Kan. Sept. 28, 2015) ("Moreover, because the Anti-Indemnification Statute specifically applies to construction agreements, and not MSA's, it is not applicable.") The facts of *Williams* are strikingly similar to the facts here. Inflection, an operator of an oil and gas well like Continental, and U.S. Well, a contractor, entered into a Master Service Agreement that required the application of Colorado law. *Williams*, at *2. A man was injured on the well site and sued both Inflection and U.S. Well. *Id.* at *3-4. Inflection and U.S. Well each cross-claimed against the other for indemnification. *Id.* at *4-5.

Like Rink, U.S. Well argued Colorado's "Anti-Indemnity Statute" made the indemnification language in the Master Service Agreement void and unenforceable. *Id.* at *12. Colorado's statute is substantially similar to the Oklahoma statute:

> Except as otherwise provided in paragraphs (c) and (d) of this subsection (6), any provision in a construction agreement that requires a person to indemnify, insure, or defend in litigation another person against liability for damage arising out of death or bodily injury to persons or damage to property caused by the negligence

---

[3] Rink's argument that it is a construction company, so therefore the MSC must be a construction contract, is false. The description of Rink's business in Lodholtz's Complaint (attached by Rink to its response), shows Rink is much more than a construction business: "Rink *hauls* clean water . . . and does *servicing* and *maintenance* on wells after they have been drilled." *See* Docket No. 46-1, ¶7. Rink also "performs *well maintenance* . . . [and] maintains pumping units, treaters, and separators." *Id.* ¶ 8.

> or fault of the indemnitee or any third party under the control or supervision of the indemnitee is void as against public policy and unenforceable.

13 C.F.R. § 13-21-111.5(6)(b). Likewise, the section defining "construction agreement" is strikingly similar to Oklahoma's statute. It defines a "construction agreement" as,

> a contract, subcontract, or agreement for materials or labor for the construction, alteration, renovation, repair, maintenance, design, planning, supervision, inspection, testing, or observation of any building, building site, structure, highway, street, roadway bridge, viaduct, water or sewer system, gas or other distribution system, or other work dealing with construction or for any moving, demolition, or excavation connected with such construction.

13 C.F.R. § 13-21-111.5(6)(e)(I). To the extent the definitions differ, the Colorado statute is broader and encompasses more activities and projects.[4]

Despite interpreting a broader statute than Section 221, the court held the contract was not a construction agreement—but rather a contract relating to the operation of an oil and gas well site. *Williams*, No. 4:15-00675, 2016 U.S. Dist. LEXIS 111273, at *15. The same is true in this case. Continental and Rink entered into a master service contract relating to the drilling and operation of oil and gas wells. *See* Docket No. 20, p. 3, ¶ 4. Thus, the MSC was not, and is not, a construction agreement. Moreover, if the Oklahoma legislature had intended the Anti-Indemnification Statute to include master service contracts, and oil and gas well sites, it was certainly capable of doing so. It did not.

Finally, the cases Rink cites to support the application of the statute to this case are misplaced. It was undisputed in both cases that the contracts were construction contracts. *Bitco Gen. Ins. Corp. v. Commerce & Indus. Ins. Co.*, No. CIV-15-206-M, 2017 U.S. Dist. LEXIS 29292, at *8 (W.D. Okla. March 2, 2017) (recognizing it was "undisputed that the Parnon/IPS

---

[4] The Colorado statute includes the following activities absent from the Oklahoma statute: design, planning, supervision, inspection, testing, and observation. It also includes work done to gas or other distribution systems which does not appear in the Oklahoma statute.

contract and the IPS/Global subcontract are 'construction agreements'"); *Bitco Gen. Ins. Corp. v. Wynn Constr. Co.*, No. CIV-17-462-M, 2017 U.S. Dist. LEXIS 127848, at *6 (W.D. Okla. August 11, 2017) (noting "Nabholz does not dispute that these contracts fall within the definition of 'construction agreement'"). Unlike the *Bitco* cases, Continental *does* dispute the MSC is a construction agreement. The plain language of the statute and relevant authority conclude, as a matter of law, Continental is correct.

**B.     Even if the MSC is Construed to be a Construction Agreement (Which it is not), the Exception in Subsection D Applies.**

Subsection D of Section 221 carves out an exception to the general anti-indemnification rule for construction contracts that require a party to purchase a project-specific insurance policy. 15 OKLA. STAT. § 221(D). Should the Court conclude the MSC is a construction contract, Continental is still entitled to indemnification because Rink was *required* under the specific terms of the MSC to purchase and maintain an insurance policy covering *all* work and services to be provided by Rink under the MSC.  *See* Docket No. 20-1, p. 9, ¶ 3.1.[5]  No work whatsoever was to be commenced by Rink until it provided Continental with an insurance certificate covering the specific work to be performed by Rink.[6]  Thus, the insurance policy required by the MSC is a project-specific insurance policy in accordance with the statute's exception, and therefore the anti-indemnification provisions of the 15 OKLA. STAT. § 221 are inapplicable.

Continental is entitled to summary judgment.  The MSC is not a construction contract and, in any event, Continental's requirement that Rink procure and maintain insurance covering all work by Rink triggers Subsection D's exception.

---

[5] Paragraph 3.1 of the MSC provides: "Contractor agrees to procure and maintain . . . policies of insurance in favor of Continental."

[6] Paragraph 3.2 of the MSC provides: "[N]o work shall be commenced . . . by [Rink] until the certificates are properly completed and on file with Continental . . . ."

## II. CONTINENTAL IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE INDEMNITY PROVISION IS NOT VOID UNDER OKLAHOMA LAW.

Rink's argument that the MSC's indemnity provision is void under Oklahoma's common law jurisprudence is without merit. Rink misconstrues the difference between an exculpation clause and an indemnity clause—wrongly attributing the necessary conditions for a valid exculpation clause to indemnity clauses. Because the MSC clearly and unequivocally expresses an intention that Continental be indemnified from any claims by Rink's own employees, it is a valid agreement under Oklahoma law.[7]

### A. The Oklahoma Supreme Court Only Requires Indemnity Agreements to be Unequivocally Clear from an Examination of the Contract.

In what has become known as the *Erie* doctrine, federal courts exercising jurisdiction on the ground of diversity of citizenship are to apply the law of the state, "[e]xcept in matters governed by the Federal Constitution or by Acts of Congress." *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). "Where . . . the **state's highest court** has unambiguously articulated state law, the district court must apply it." *M&I Marshall & Ilsley Bank v. Sunrise Farms Dev., LLC*, 737 F.3d 1198, 1202 (8th Cir. 2013) (emphasis added). "The responsibility of the federal courts, in matters of local law,

---

[7] Rink did not raise unenforceability of the indemnity provisions as an affirmative defense. *See* Docket No. 5. Its failure to do so acts as a waiver, and unenforceability cannot be raised here for the first time to prevent the entry of summary judgment against it. *See, e.g., Tidewater Finance Co., Inc. v. Fiserv Solutions, Inc*., 192 F.R.D. 516 (E.D. Va. 2000) (holding that a party waived the right to make unenforceability argument in defense of breach of contract claim by failing to raise unenforceability as an affirmative defense under Fed. R. Civ. P. 8(c)). *See also Monarch Fire Prot. Dist. v. Freedom Consult. & Auditing Servs.,* 678 F. Supp. 2d 927, 943, n.14 (E.D. Mo. 2009) (failure to raise affirmative defense of unenforceability of indemnity clause "waives that defense."). *See also*, *Transamerica Lif Ins. Co. v. Lincoln Nat'l Life Ins. Co*., 590 F. Supp. 2d 1093, 1107, n.5 (N.D. Iowa 2008) ("'[g]enerally, failure to plead an affirmative defense results in a waiver of that defense.'") (quoting *Sherman v. Winco Fireworks, Inc*., 532 F.3d 709, 715 (8th Cir. 2008)). Nonetheless, Continental addresses Rink's new affirmative defense without prejudice to Continental's claim that it is barred for failure to timely raise it in Rink's Answer.

is not to formulate the legal mind of the state, but merely to ascertain and apply it." *Yonder v. Nu-Enamel Corp.*, 117 F.2d 488, 489 (8th Cir. 1941).

To support its argument that indemnification agreements must meet a three-part test, Rink relies on *Noble Steel, Inc. v. Williams Brothers Concrete Constr. Co.*, 2002 OK CIV APP 66, 49 P.3d 766.  Not only is *Noble Steel* plainly wrong, it was decided by the Oklahoma Court of Civil Appeals. This Court, however, "must apply Oklahoma law as announced by the Oklahoma Supreme Court." *See Fields v. Farmers Ins. Co.*, 18 F.3d 831, 834 (10th Cir. 1994). If the Oklahoma Supreme Court has ruled on the issue of indemnity agreements, this Court must apply that law.

The Oklahoma Supreme Court has, in fact, ruled on the validity of indemnification agreements. *Fretwell v. Prot. Alarm Co.*, 1988 OK 84, 764 P.2d 149; *Elsken v. Network Multi-Family Security Corp.*, 1992 OK 136, ¶ 18, 838 P.2d 1007, 1011. In *Fretwell*, the Oklahoma Supreme Court upheld an indemnity provision in a contract between an alarm company and a customer which indemnified the alarm company against any claims of third parties resulting from its negligence. 1988 OK at ¶ 3, 764 P.2d at 150. The relevant clause stated, "Subscriber agrees to indemnify, defend and hold [Defendant] harmless from any and all claims and lawsuits . . . based upon . . . negligence . . . on the part of [Defendant], its agents, servants or employees." *Id*. The Court held, while it strictly construes such agreements, "where the intention to do so is unequivocally clear from an examination of the contract, such an agreement is enforceable." *Fretwell*, 1988 OK at ¶ 12, 764 P.2d at 152-53. In other words, Oklahoma's highest Court does not apply a three-part test for the enforceability of indemnification agreements.  Under Oklahoma law, there is but one requirement for the enforceability of an indemnification clause -- "where the intention to [indemnify] is unequivocally clear from an examination of the contract." *Id*. at ¶ 12;

7

*Elsken*, 1992 OK at ¶ 18, 838 P.2d at 1011 (rejecting "the argument that the indemnity clause was unenforceable because it sought to indemnify the appellant from its own negligence," and reaffirming, "where the intention to indemnify is unequivocally clear from an examination of the contract, such agreement is enforceable.")

### B.  The Three-Part Test Rink Proposes Applies to Exculpatory Clauses—Not Indemnity Clauses.

Rink's response confuses indemnity clauses with exculpatory clauses. The confusion begins with its reliance on *Schmidt v. United States*, a case in which the Oklahoma Supreme Court applied a three-part test to *an exculpatory clause*. 1996 OK 29, *1, 912 P.2d 871, 872. Ironically, Rink also cites *Arnold Oil Props., L.L.C. v. Schlumberger Tech. Corp.*, No. CIV-08-1361-D, 2010 U.S. Dist. LEXIS 9725, at *7 (W.D. Okla. Feb. 4, 2010) which points out the distinction.  The *Arnold* court noted "at the outset that the indemnification provision in the instant contract is quite different than the exculpatory release considered in *Schmidt*."  *Id*. The Tenth Circuit, in a case also cited by Rink, explained the difference as follows:

> While the terms indemnity and exculpatory are often used interchangeably, they are, in fact, different. An exculpatory clause releases in advance the second party for any harm the second party might cause the first party after the contract is entered. [An] indemnification clause . . . protects against claims made by parties *outside the contract*.

*Arnold Oil Props. LLC v. Schlumberger Tech. Corp.*, 672 F.3d 1202, 1206-07 (10th Cir. 2012) (emphasis added) ("*Arnold II*").  In other words, exculpatory clauses seek to absolve one party from liability for injury to the other party with whom it has contracted.  In contrast, an indemnification contract is an agreement "'to make good and save harmless the person, with whom the contract is made, upon an obligation of such person to a third person.'"  *Arnold*, at *3 (*quoting*

8

*Thomas v. Williams*, 49 P.2d 557, 560 (Okla. 1935)).[8]  The three-part test for exculpatory clauses cited in these cases do not apply to this case.[9]

It is undisputed the MSC provision at issue is an indemnity clause. Still, in an effort to avoid its duties under the contract, Rink offers a three-part test intended for *exculpatory* clauses. Because the three-part test for exculpatory clauses does not apply to indemnity clauses, this Court must apply the Oklahoma Supreme Court's ruling in *Fretwell*. The MSC's indemnity provision is unequivocally clear. Thus, under *Fretwell*, the agreement is enforceable.

### C.   The MSC is not a Contract of Adhesion.

Although not an element of the enforceability of an indemnity provision, Rink's naked claim that the MSC is a contract of adhesion fails in any event.  Rink presumes, without evidence, that the MSC is a contract of adhesion.  Not so.  Oklahoma law explains an adhesion contract is one offered "on a take-it-or-leave-it basis" where "[t]he services that are the subject of the contract cannot be obtained except by acquiescing to the form agreement." *Bilbrey v. Cingular Wireless, L.L.C.*, 2007 OK 54, ¶ 10, 164 P.3d 131, 134. The public policy supporting the interpretation of

---

[8] For example, a clause releasing Continental in advance from any and all liability to Rink for something Continental may do to Rink in the future would be an exculpatory clause.  Here, however, Continental is seeking indemnification from Rink for the claim of a *third party outside of the contract*, one of Rink's employees.  That is an indemnification claim.  In *Nobel Steel*, upon which Rink relies, the Oklahoma Court of Civil Appeals in an "action for indemnity" wrongfully applied the law on the enforceability of exculpation clauses.  *Nobel Steel*, at ¶ 10.  This shows why federal courts look to the law of a state's highest court, such as the Oklahoma Supreme Court, and not intermediate courts of civil appeals.

[9] The second element of the test for the enforceability of an exculpation clause is that "there must have been *no vast difference* in bargaining power between the parties."  *Schmidt v. United States*, 1996 OK 29, ¶8 (emphasis by the Court); *Nobel Steel*, at ¶ 10.  Rink spends an inordinate amount of its brief trying to manufacture a question of fact regarding this second element of enforceability of an *exculpation* clause, notwithstanding that this is not an exculpation clause case and does not apply to the enforceability of the *indemnification* clause in the parties' MSC.

an adhesion contract against the drafter is that parties with lesser bargaining power "are not likely to read a maze of fine print" and it would be inefficient and costly for them to "submit[] such standard consumer contracts to their attorneys for an explanation of their rights and obligations." *Id.* ¶¶ 10, 12, 164 P.3d at 134-35. Here, that policy fear is nonexistent because Rink does not assert that it did not read the MSC or that it could not have submitted it to Rink's attorneys.  On the contrary, the only reason Rink says the MSC is an "adhesion contract" is because Rink thought that ***if*** it asked for changes, it didn't ***think*** Continental would allow it.  Not only is this pure speculation, it is categorically false. As Stephanie Giordano, a contracts administrator for Continental attests, Continental routinely negotiates revisions to its master service contracts requested by its vendors.  Ex. 1, Giordano Aff. ¶ 2.

Rink offers nothing more than the fact it ***did not try*** to negotiate changes to the MSC in support of its argument that the MSC must be a contract of adhesion. Rink "simply ask[s] the Court to conclude that, on its face, the [MSC] is an adhesion contract." *Eastham v. Chesapeake Appalachia, LLC*, No. 2:12-cv-615, 2013 WL 5274576, at *9 (S.D. Ohio Sept. 18, 2013). This is entirely inadequate. "[A]bsent ***evidence*** to show that [Rink] could not, in fact, negotiate terms, the Court is unable to conclude that the [MSC] is a contract of adhesion." *Id.* (emphasis added). The naked assertion offered by Rink—unsupported by ***any*** evidence—is not enough for the Court to determine the MSC is a contract of adhesion. *See id.*

Other jurisdictions agree that when a party does not even try to negotiate a contract, there is no evidence the contract is one of adhesion. *See, e.g.*, *Le v. Gentle Dental of Or.*, No. 09-1352-AC, 2010 WL 3394542, at *4 (D. Or. July 29, 2010) (finding no contract of adhesion where, *inter alia*, the plaintiff did not ask to negotiate the contract or a specific provision's applicability); *Carl Kelley Constr. LLC v. Danco Techs.*, 656 F. Supp. 2d 1323, 1342 (D.N.M. 2009) ("[A] failure to

even attempt negotiations undercuts the Court's ability to find that the contract was a take it or

leave it offer. Without any evidence that [Continental] rebuffed attempts to negotiate, told [Rink]

that it had no choice but to sign if it wanted [to work for Continental], or undertook some similarly

domineering measure, the Court cannot say that [Continental] made an offer without affording

[Rink] a realistic opportunity to bargain . . . ." (quotation omitted));[10] *cf. Martindale v. Sandvik,*

*Inc.*, 800 A.2d 872, 881 (N.J. 2002) ("Nothing in the record indicates that plaintiff asked to alter

any terms of the [employment] application or that [defendant] would have refused to consider her

for the position if she did not assent to the arbitration provision as presented. Accordingly, we are

not persuaded that plaintiff was forced to sign an inflexible contract of adhesion . . . .").

Simply put, Rink offers *no evidence* the MSC is a contract of adhesion. As the party

asserting the MSC is an adhesion contract and the moving party on this issue, Rink bears (and fails

to meet) its burden. *See Engh v. LEAM Drilling Sys., LLC*, No. 4:13-CV-34, 2015 WL 777753, at

*4 (D.N.D. Feb. 24, 2015) (moving party bears burden to establish basis for motion for summary

judgment); *cf. In re Am. Eagle Coatings, Inc.* 353 B.R. 656, 664 (Bankr. W.D. Mo. 2006) (party

asserting a contract is one of adhesion bears burden of demonstrating unconscionability).

Moreover, finding a contract to be one of adhesion is premised on a finding that one party

was not able to negotiate due to its lesser bargaining power. *See Bilbrey*, 2007 OK 54, ¶ 10, 164

P.3d at 134. This is often due to one party being less sophisticated than the other. *Cf. Am. Bank &*

*Trust Co. v. Bond Int'l Ltd.*, No. 06-CV- CVE-FMH, 2006 WL 2947088, at *2 (N.D. Okla. Oct.

---

[10] The U.S. District Court for the District of New Mexico continued: "If anything, New Mexico
law is even clearer that, when a party 'did not express any wish to alter or negotiate the contract
terms' or 'object[] to' certain provisions, then the contract is not an adhesion contract." *Carl Kelly
Constr. LLC*, 656 F. Supp. 2d at 1342 (alteration in original) (quoting *Guthmann v. LaVida Llena*,
709 P.2d 675, 678-79 (N.M. 1985)).

16, 2006). That Rink did not *attempt* to negotiate the MSC does not show a lack of equal bargaining power to Continental. In determining bargaining power, Oklahoma courts look to "'the amount of free choice [a] party *could have exercised*,'" not the free choice a party actually exercised. *Arnold II,* 672 F.3d at 1208 (emphasis added) (quoting *Schmidt v. United States*, 912 P.2d 871, 874 (Okla. 1996)). Because Rink *could* have negotiated the MSC, it was not at a disadvantage in bargaining power to Continental. *See* Ex. 1, Giordano Aff. ¶ 2.

For all these reasons, Rink has failed its burden to demonstrate the MSC to be a contract of adhesion.[11]

## III.   RINK'S "SUPPLEMENTAL STATEMENT OF FACTS" DOES NOT RAISE AN ISSUE OF FACT BARRING SUMMARY JUDGMENT

Without contesting any of Continental's undisputed facts, Rink sets forth immaterial, and in some cases, erroneous facts in an attempt to manufacture an issue of fact and to support its proposition that the MSC is a "construction contract." Rink's "facts" in paragraphs 1-3 (that Rink is family-owned, licensed to perform construction services, and performs a variety of construction services) are immaterial and do not change the fact the MSC at issue is not a construction contract. Rink's assertion in paragraphs 4 and 8 (that Continental hired Rink to perform only construction

---

[11] Rink makes one final Hail Mary asserting, without any legal authority, that indemnity clauses in oil and gas contracts are against Oklahoma's public policy. Rink cites a ruling from a state court trial judge with no precedential value whatsoever which held that an *exculpation* clause protecting an *elevator operator* was against public policy. Not only does the present case not involve an exculpation clause or elevators, Oklahoma courts have long recognized that indemnification agreements under Oklahoma law are valid: "[a]n indemnity agreement is a valid agreement in Oklahoma and is governed by statute." *Fretwell*, at ¶ 12 (citing 15 OKLA. STAT. §§ 421-430). Even in states that have enacted anti-indemnity statutes relating to the oil field such as Wyoming, its courts refuse to "declare all contracts indemnifying parties against their own negligence void as against public policy." *True Oil Co. v. Mid-Continent Cas. Co.*, No. 02-CV-1024-J, 2005 U.S. Dist. LEXIS 48477, at *25 (D. Wyo. Feb. 8, 2005). Importantly, Oklahoma has not adopted anti-indemnity statutes applicable to the oil and gas field. The bottom line is that Rink's claim that the indemnification clause in Continental's MSC is against Oklahoma public policy and void is without any legal support.

services) is not only immaterial to whether the MSC is a construction contract, it is also blatantly false in light of the admissions by Lodholtz that Rink does much more than construction services for Continental, *see* Docket No. 46-1, ¶¶ 7-9, that Lodholtz himself does not do construction, but rather was a supervisor of a maintenance crew providing oil site maintenance, supervision and repair, *Id*. at ¶ 10, and at the time of the accident, was doing maintenance work to "thaw and unblock" a frozen flow line, not construction work. *See* Docket No. 47-1, p. 2.  Rink's alleged "facts" in paragraphs 5-7 that there was unequal bargaining power between Rink and Continental because "***if***" Rink would have requested changes to the MSC, Rink "***believes***" Continental would have refused those changes is not only pure speculation and not "facts" at all, but is immaterial to whether the MSC's indemnification provision is clear and unequivocal.  Rink's alleged fact in paragraph 9 that Lodholtz, at the time of the accident, was rebuilding, replacing, and adjusting oil well components at the Bombach 4-35H well site, citing Work Order 079116, is false.  That Work Order was for a *different well*, the "Mack 7-2H, not the Bombach 4-35H.  *See* Docket No. 47-1, p. 1.  Continental does not dispute the facts alleged by Rink in paragraphs 10-16 regarding the Lodholtzs' lawsuit and Continental's demand that Rink defend, indemnify, and hold harmless Continental from the claims of the Lodholtzs.  At bottom, none of Rink's alleged "facts" changes the outcome of this lawsuit.

## CONCLUSION

The interpretation of the MSC is a matter of law for the Court.  The MSC's clear and unambiguous terms require Rink to defend, indemnify and save harmless Continental from and against any and all claims, demands, and causes of action brought against Continental by the Lodholtzs.  Accordingly, Continental is entitled to partial summary judgment on Count II of its Complaint for a declaratory judgment that, as a matter of law, Rink has an obligation under the

express terms of the MSC to defend, indemnify and save harmless Continental from any and all of Lodholtzs' claims.

<div style="margin-left:40%">

Respectfully submitted,

*s/ Gary S. Chilton*
Gary S. Chilton *(Admitted to D.N.D.)*
Ryan A. Haynie *(Admitted to D.N.D.)*
HOLLADAY & CHILTON, PLLC
204 N. Robinson, Suite 1550
Oklahoma City, OK 73102
Telephone:  (405) 236-2343
Facsimile:  (405) 236-2349
gchilton@holladaychilton.com
rhaynie@holladaychilton.com

-and-

Lawrence Bender, ND Bar #03908
Danielle M. Krause, ND Bar #06874
FREDRIKSON & BYRON, P.A.
1133 College Drive, Suite 1000
Bismarck, ND 58501
Telephone:  (701) 221-8700
Facsimile:   (701) 221-8750
lbender@fredlaw.com
dkrause@fredlaw.com

ATTORNEYS FOR PLAINTIFF
CONTINENTAL RESOURCES, INC.

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of February, 2018, I electronically transmitted a true and correct copy of the foregoing **REPLY BRIEF IN SUPPORT OF MOTION OF CONTINENTAL RESOURCES, INC. FOR SUMMARY JUDGMENT AGAINST RINK CONSTRUCTION, INC.** to the Clerk of Court using the ECF System for filing.  Based on the records currently on filed, the Clerk of Court will transmit a Notice of Electronic Filing (NEF) to the following ECF registrants:

Kristin B. Rowell—krowell@anthonyostlund.com
Shannon M. Awsumb—sawsumb@anthonyostlund.com
David D. Schweigert—dschweigert@bkmpc.com

*s/ Gary S. Chilton*