# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Continental Resources Inc., | ) | **ORDER GRANTING PLAINTIFF'S** |
| | ) | **MOTION FOR SUMMARY JUDGMENT** |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Rink Construction, Inc., | ) | Case No. 1:16-cv-091 |
| | ) | |
| Defendant, | ) | |

Before the Court is the Plaintiff's motion for partial summary judgment filed on December 13, 2016. See Docket No. 18. The Defendant file a response in opposition to the motion on January 17, 2017. See Docket No. 25. The Plaintiff filed a reply brief on January 30, 2017. See Docket No. 26. The Defendant filed a supplemental brief on January 12, 2018. See Docket No. 45. The Plaintiff filed a reply to the Defendant's supplemental brief on February 2, 2018. See Docket No. 51. For the reasons set forth below, the motion is granted.

## I.  BACKGROUND

Continental Resources Inc. ("Continental") is an Oklahoma corporation with its principal place of business in Oklahoma City, Oklahoma. Continental conducts oil and gas exploration and development work in North Dakota. Rink Construction Inc. ('Rink") is a North Dakota corporation with its principal place of business in Keene, North Dakota. Rink performs a variety of services for its clients, including building roads, general construction, and oil well maintenance.

On April 21, 2008, Continental and Rink entered into a Master Service Contract ("MSC") wherein Rink and Continental agreed that from time to time Rink would perform work and/or provide services to Continental. Specific work details were to be set forth in a work order. The

1

MSC is governed by the laws of the State of Oklahoma.

Brad Lodholtz was an employee of Rink and worked as supervisor of a Rink maintenance crew from April 2013 through December 17, 2013. Continental retained Rink to provide services with respect to an oil and gas well in McKenzie County, North Dakota, known as the Bohmbach 4-35H well (the "Well"). On December 17, 2013, Lodholtz was severely injured while working on flow lines at the Well ("Incident").

On July 29, 2015, Lodholtz and his wife filed a personal injury lawsuit in the District Court for McKenzie County, North Dakota, against Continental for injuries arising out of the Incident. The personal injury lawsuit was removed to the United States District Court for the District of North Dakota on August 21, 2015. Lodholtz claimed his injuries resulted from the negligence of Continental. A loss of consortium claim was also made.

On August 7, 2015, nine days after the Lodholtzs' filed the personal injury lawsuit, Continental served a demand upon Rink requesting Rink defend, indemnify, and save harmless Continental against all claims, demands, judgments, defense costs or suits arising out or related to, directly or indirectly, the Incident. Continental further demanded Rink provide Continental with complete and full defense of any lawsuits brought against Continental arising out of the Incident. On August 24, 2015, after receiving no response to its first demand letter, Continental served a second demand letter upon Rink.

By letter dated October 7, 2015, Rink's insurer, Mid-Continent Casualty Company ("Mid-Continent"), advised Continental it was investigating the insurance coverage available to Continental under the terms of Rink's commercial general liability insurance policy. By letter dated April 4, 2016, Mid-Continent advised Continental it had accepted Continental's tender of defense and indemnity upon a full reservation of rights to contest the obligation. Mid-Continent has

provided Continental a full defense in the Lodholtz lawsuit, including on appeal, since April 4, 2016.

Continental filed this separate declaratory judgment action against Rink in federal court on April 25, 2016. Continental seeks a declarations that the indemnification clause in the MSC is valid and enforceable and requires Rink to defend, indemnify, and save harmless Continental from the claims of the Lodholtzs. Continental has also asserted a claim for breach of contract but that claim is not the subject of this motion. Rink denies it has any obligation under the MSC to defend, indemnify, and save harmless Continental from the claims of the Lodholtzs. On February 14, 2017, the Court stayed the declaratory judgment action until the underlying Lodholtz personal injury lawsuit was resolved.

On July 22, 2017, a jury found Continental negligent in the Lodholtz personal injury lawsuit and awarded damages in the amount of $8,496,000. The jury apportioned fault as 72.5% to Continental and 27.5% to Lodholtz. No fault was apportioned to Rink. On or about August 25, 2017, Continental sent a letter to Rink demanding that Rink indemnify Continental for the entire verdict amount as per the terms of the MSC. The stay of the declaratory judgment action was lifted on November 3, 2017.

After the damages were adjusted to account for the percentage of fault attributed to Lodholtz and post-trial motions were ruled upon, a second amended judgment in the amount of $6,159,600 was entered against Continental on May 10, 2018. Both parties have appealed and the matter is currently pending before the Eighth Circuit Court of Appeals. Execution of the judgment has been stayed pending the outcome of the appeal. Continental's motion for partial summary judgment on its claim for declaratory relief is now ripe for consideration.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id.

The Court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the responsibility of informing the court of the basis for the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The non-moving party may not rely merely on allegations or denials in its own pleading; rather, its response must set out specific facts showing a genuine issue for trial. Id.; Fed. R. Civ. P. 56(c)(1). The court must consider the substantive standard of proof when ruling on a motion for summary judgment. Anderson, 477 U.S. at 252.

## III. LEGAL DISCUSSION

Continental contends the indemnity clause in the MSC is valid and should be enforced against Rink. Rink contends it is not required to indemnify Continental because the indemnity provision in the MSC is void under Oklahoma's anti-indemnity statute and unenforceable under

Oklahoma common law.

### A. OKLAHOMA'S ANTI-INDEMNITY STATUTE

Oklahoma's construction agreement anti-indemnity statute provides as follows:

A. For purposes of this section, "construction agreement" means a contract, subcontract, or agreement for construction, alteration, renovation, repair, or maintenance of any building, building site, structure, highway, street, highway bridge, viaduct, water or sewer system, or other works dealing with construction, or for any moving, demolition, excavation, materials, or labor connected with such construction.

B. Except as provided in subsection C or D of this section, any provision in a construction agreement that requires an entity or that entity's surety or insurer to indemnify, insure, defend or hold harmless another entity against liability for damage arising out of death or bodily injury to persons, or damage to property, which arises out of the negligence or fault of the indemnitee, its agents, representatives, subcontractors, or suppliers, is void and unenforceable as against public policy.

C. The provisions of this section do not affect any provision in a construction agreement that requires an entity or that entity's surety or insurer to indemnify another entity against liability for damage arising out of death or bodily injury to persons, or damage to property, but such indemnification shall not exceed any amounts that are greater than that represented by the degree or percentage of negligence or fault attributable to the indemnitor, its agents, representatives, subcontractors, or suppliers.

D. This section shall not apply to construction bonds nor to contract clauses which require an entity to purchase a project-specific insurance policy, including owners' and contractors' protective liability insurance, project management protective liability insurance, or builder's risk insurance.

E. Any provision, covenant, clause or understanding in a construction agreement that conflicts with the provisions and intent of this section or attempts to circumvent this section by making the agreement subject to the laws of another state, or that requires any litigation, arbitration or other dispute resolution proceeding arising from the agreement to be conducted in another state, is void and unenforceable.

Okla. Stat. tit. 15, § 221.

The parties dispute whether the MSC in this case is a "construction agreement" as defined

by the Oklahoma statute. If the MSC falls within the definition of a "construction agreement," there is no question it violates Section 221 in so far as it requires Rink to indemnify Continental for Continental's own negligence.

The MSC did not define the work that was to be completed from time to time by Rink for Continental. Rather, individual work orders defined the work that Continental was requesting Rink perform. In the oil and gas industry the parties' agreement often consists of two parts–a master service contract and a job specific work order. See Grand Isle Shipyard, Inc. v. Seacor Marine, LLC, 589 F.3d 778, 787 n.6 (5th Cir. 2009) (discussing the common practice in the oil and gas field to enter contracts in two stages--a long-term master contract and a subsequent work order); Dominion Expl. & Prod., Inc., v. Delmar Sys., Inc., No. 07-9492, 2012 WL 6020121, at *5 n.6 (E.D. La. Dec. 3, 2012) (noting it is a common practice for oil and gas contracts to be issued in two stages--a master agreement and a work order). The two parts should be read together in order to determine the intent of the parties. Id.

In this case, the work order provides Rink was to "pull apart flowline due to frozen choke/unthaw and unblock flowline/bleedoff casing pressure" at the Bohmbach 4-35H oil well which Continental owned and operated. See Docket No. 47-1. The work was ordered by Continental foreman Dan Becker. See Docket No. 46-1, ¶ 12. Any fair and reasonable description of the work to be done pursuant to the work order is repair and maintenance on an oil and gas well. The work order does not call for any construction activities.

The anti-indemnity statute provides a "construction agreement" means a contract "for construction, alteration, renovation, repair, or maintenance of any building, building site, structure, highway, street, highway bridge, viaduct, water or sewer system, or other works dealing with construction." Okla. Stat. tit. 15, § 221(A). The definition of "construction agreement"

encompasses maintenance, but only of a "building, building site, structure, highway, street, highway bridge, viaduct, water or sewer system, or other works dealing with construction." Id. This definition of a "construction agreement" does not encompass service work on oil wells. While Rink may have provided construction services to Continental on other occasions and pursuant to other work orders, the work order in this case did not call for any such activities.

The only case law which the parties cite applying Oklahoma's anti-indemnity statute involve scenarios where the parties did not dispute that the contacts in question were "construction agreements" as defined by the statute. See JP Energy Mktg., LLC v. Commerce & Indus. Ins. Co., 2018 412 P.3d 121, 129 (Okla. Civ. App. 2017) (stating it was undisputed that the contract and subcontract in question were "construction agreements"); Bitco Gen. Ins. Corp. v. Commerce & Indus. Ins. Co., No. CIV-15-206-M, 2017 WL 835197, at *3 (W.D. Okla. March 2, 2017)(same); Bitco Gen. Ins. Corp. v. Wynn Constr. Co., No. CIV-17-462-M, 2017 WL 3470584, at *2 (W.D. Okla. August 11, 2017) (same).

However, Colorado's anti-indemnity law, which is very similar to the Oklahoma statute at issue in this case, has been held inapplicable to work done at an oil well site. See Williams v. Inflection Energy, LLC, No. CIV.A. 4:15-00675, 2015 WL 4952626 (M.D. Pa. Aug. 19, 2015). In *Williams*, the employee of a subcontractor was injured while performing work at an oil well site and sued the well owner for negligence. The master service contract contained an indemnity clause which covered the well owner's own negligence. The employer of the injured work attempted to avoid indemnifying the owner of the well citing Colorado's anti-indemnity statute. Colorado's anti-indemnity law, like Oklahoma's law, prevents a party to a construction contract from shifting liability for its own negligence to another party. Id. at 5. Colorado law defines a "construction agreement" as,

7

> a contract, subcontract, or agreement for materials or labor for the construction, alteration, renovation, repair, maintenance, design, planning, supervision, inspection, testing, or observation of any building, building site, structure, highway, street, roadway bridge, viaduct, water or sewer system, gas or other distribution system, or other work dealing with construction or for any moving, demolition, or excavation connected with such construction.

Colo. Rev. Stat. § 13-21-111.5(6)(e)(I). The court in *Williams* found the master service contract was not a construction contract because the contract was for the operation of a drill site and not a construction agreement. The Colorado statute is somewhat broader than the Oklahoma definition at issue in this case. The court in *Williams* noted that several states, including Texas, Louisiana, and Wisconsin have anti-indemnity statutes which pertain to oil and gas wells but Colorado does not. *Williams* clearly supports the position of Continental in this case. If Oklahoma desired to prevent the use of indemnity clauses in contracts for work on oil wells it could certainly do so.

Based upon the holding in *Williams* and the plain language of the Oklahoma's anti-indemnity statute, the Court finds as a matter of law that the MSC and work order in this case are not a "construction agreement" as defined by 15 Okla. Stat. § 221(A). Therefore, Oklahoma's anti-indemnity statute does not apply here. Having determined that the contract in this case is not a "construction agreement," the Court need not decide whether the exception in subsection D applies.

### B. **OKLAHOMA COMMON LAW**

Rink next contends the MSC was not the product of an arms length transaction and the indemnification clause in the MSC violates Oklahoma public policy. Continental maintains the indemnity clause is fully enforceable.

1.  **ARM'S-LENGTH TRANSACTION**

Rink contends the MSC was an adhesion contract entered into between parties with unequal bargaining power; a take-it-or-leave-it contract Rink was forced to sign if it wanted to do work for Continental. Continental maintains it routinely negotiates revisions to its master service contracts and Rink did not ask for any revisions.

The Oklahoma courts have uniformly held that a contract which affords indemnity from one's own negligence is fully enforceable as long as (1) the parties express their intent to exculpate in unequivocally clear language, (2) the agreement results from an arm's-length transaction between parties of equal bargaining power, and (3) the exculpation does not violate public policy. See Kinkead v. W. Atlas Int'l, Inc., 894 P.2d 1123, 1127 (Okla. Civ. App. 1993); see also Fretwell v. Prot. Alarm Co., 764 P.2d 149, 152-53 (Okla. 1988) (strictly construing an indemnification clause which clearly expressed the intentions of the parties); Elsken v. Network Multi-Family Sec. Corp., 838 P.2d 1007, 1011 (Okla. 1992) (enforcing an indemnification clause for one's own negligence). In interpreting a contract for indemnity, generally applicable rules of contract construction must be applied and every attempt must be made to "ascertain the intention of the parties, based upon the whole contract, and give effect to that intent if it can be done consistent with legal principles." Wallace v. Sherwood Constr. Co. Inc., 877 P.2d 632, 634 (Okla. Civ. App. 1994). The language in a contract is to be given its plain and ordinary meaning. Pitco Prod. Co. v. Chaparral Energy, Inc., 63 P.3d 541, 546 (Okla. 2003). If a contract is complete and unambiguous, the language of the contract is the only legitimate evidence of what the parties intended. Id. In such a case, intent "cannot be divined from extrinsic evidence but must be gathered from a four-corners' examination of the instrument." Id.

To ascertain the relative equality of the contracting parties' bargaining power, a court should

consider: "(1) the importance of the subject matter to the physical or economic well-being of the party agreeing to the release and (2) the amount of free choice that party could have exercised when seeking alternate services." Schmidt v. United States, 912 P.2d 871, 874 (Okla. 1996). Adhesion contracts are often an indication of unequal bargaining power. An adhesion contract is one that is not the result of bargaining between the parties but rather one that has been offered on a take-it-or-leave-it basis. Bilbrey v. Cingular Wireless, L.L.C., 164 P.3d 131, 234 (Okla. 2007). The classic example of an adhesion contract is a consumer contract for the purchase of goods or services and which the consumer neither read nor could understand and under the circumstances it would be impractical and cost-prohibitive to seek legal advice. Id. Insurance contracts are another classic example of an adhesion contract. Max True Plastering Co. v. U.S. Fid. & Guar. Co., 912 P.2d 861, 864 (Okla. 1996). Adhesion contracts are not invalid, but are strictly construed against the drafter. See Landro v. Glendenning Motorways, Inc., 625 F.2d 1344, 1354 (8th Cir. 1980), overruled on other grounds by Martin v. Ark. Blue Cross & Blue Shield, 299 F.3d 966 (8th Cir. 2002).

The MSC in this case is not a typical consumer contract signed by an individual consumer for the purchase of some good or service such as a cell phone of cellular phone service as was the case in *Bilbrey* or an insurance contract like that in *Max True Plastering*. All Rink offers in support of its contention that the MSC is a contract of adhesion is speculation based upon its belief that had it requested changes to the MSC, Continental would have rejected the changes and Rink would not have been awarded the work. See Docket Nos. 47 and 48. The problem with Rink's belief is that it is simply speculation unsupported by evidence. Continental states that it routinely negotiates revisions to master service contracts and commonly agrees to accept changes suggested by its vendors. See Docket No. 51-1. The undisputed fact is Rink did not request that Continental make any changes to the MSC. There is no evidence that Rink did not freely enter into the contract or that

10

Rink did not read and understand the contract. Both parties to the MSC are corporations, with full access to legal representation to review the contract. This is not a case of grossly uneven bargaining power or the uninformed. Corporations working in the oil and gas industry can hardly be described as unsophisticated. Under theses circumstances, there can be no finding the MSC was an adhesion contract or the MSC was not the result of an arm's-length transaction. The Court finds, as a matter of law, that the MSC was the product of an arm's-length transaction and Rink and Continental were not of such differing bargaining power as to invalidate the indemnification provision in the MSC.

### 2. **PUBLIC POLICY**

Rink contends the provision in the MSC requiring it to indemnify Continental for Continental's own negligence is contrary to public policy and should be declared unenforceable. Specifically, Rink contends the indemnity provision results in an unreasonable risk-shifting that violates public policy by providing a disincentive to the safe administration of oil and gas wells. The contention is unpersuasive.

In *Schmidt*, the Oklahoma Supreme Court provided guidance as to when a court may declare portions of an exculpatory contract clause void as against public policy. Schmidt, 912 P.2d at 875.

> While courts may declare void those portions of private contracts which contradict public policy, they must do so *only with great caution*. Two classes of exculpating agreements may be said to violate public policy: (1) those which-if enforced-patently would tend to injure public morals, public health or confidence in the administration of the law and (2) those which would destroy the security of individuals' rights to personal safety or private property.

Id. Although this case involves an indemnification clause rather than an exculpatory clause, the Court finds the Oklahoma Supreme Court guidance in *Schmidt* helpful.

In *Elsken*, the Oklahoma Supreme Court noted that "[w]e must remain mindful that contracts

11

should not be declared void on the ground of public policy except in those cases that are free from doubt. Prejudice to the public interest must hence be clearly apparent before a court is justified in pronouncing a solemn agreement to be of no effect . . . . Contracts must stand unless it clearly appears that public right or public weal is contravened." Elsken, 838 P.2d at 1009 (quoting Hargrave v. Can. Valley Elec. Coop., 792 P.2d 50, 58-59 (Okla. 1990).

Public safety is always an important consideration. So too is the right to contract. See Hargrave, 792 P.2d at 58. The Court cannot say it is <u>clearly</u> apparent that the indemnity provision in the MSC violates public policy. Multiple entities are involved in and exercise some degree of control over the operation and maintenance of an oil well. While one can certainly argue that it would be better public policy to prohibit risk-shifting such as occurs in indemnity provisions like the one at issue in this case, the prejudice to the public is not clearly apparent here such that the Court would be willing to make such a declaration as this is not a case involving a public carrier or a quasi-public corporation such as a railroad. Oil wells are generally not locations open to the public and the dangers of working on or near an oil well are well known. This Court has previously rejected an attempt to void an indemnity provision shifting liability for a party's own negligence in an oil and gas related master service contract. Chapman v. Hiland Partners GP Holdings, LLC, No. 1:13-CV-052, 2015 WL 12591722, at *6 (D.N.D. Apr. 23, 2015), aff'd, 862 F.3d 1103 (8th Cir. 2017). In that order the Court noted that Oklahoma law did not support such an argument and that Oklahoma clearly recognizes the policy implications in such risking shifting and has chosen not to invalidate such provisions. In this case, the Court finds public policy considerations favor enforcement of the contract rather than rewriting it to reallocate the risk bargained for and agreed to by both Continental and Rink. Velocity Express, Inc. v. Roberts Truck Ctr., Inc., No. CIV-02-1849-F, 2003 WL 23315993, at *5 (W.D. Okla. Aug. 8, 2003) (finding Oklahoma's public

12

policy favored enforcing indemnity clause in a truck rental agreement). Consequently, the Court concludes the indemnity agreement is enforceable and Rink must indemnify Continental in the underlying personal injury action.

IV.     **CONCLUSION**

For the reasons set forth above, the Plaintiff's motion for partial summary judgment (Docket No. 18) is **GRANTED**. The motion for a hearing (Docket No. 52) is **DENIED**. The motion to stay (Docket No. 62) is **DENIED**. The Court finds the indemnity provision in the Master Service Contract between Continental Resources, Inc. and Rink Construction, Inc. is fully enforceable under Oklahoma law. As a result, Rink is obligated to defend, indemnify, and save harmless Continental from all claims, demands, judgments, and settlements related to the MSC and arising out of the Lodholtz lawsuit.

**IT IS SO ORDERED**.

Dated this 24th day of October, 2018.

/s/ Daniel L. Hovland
Daniel L. Hovland, Chief Judge
United States District Court